**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| **ADRIENNE LECA**<br>**C/O 1825 K Street, NW, Suite 750**<br>**Washington, DC 20006**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**STERLING MEDICAL ASSOCIATES,**<br>**INC.**<br><br>    **SERVE:**<br>    **Corporate Statutory Services, Inc.**<br>    **255 E Fifth Street, Suite 2400**<br>    **Cincinnati, OH 45202**<br><br>    **Defendant.** | **Case No.:**<br><br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

COMES NOW Plaintiff Adrienne Leca, by undersigned counsel, and complains of Defendant Sterling Medical Associates, Inc. as follows:

PRELIMINARY STATEMENT

1.  Sterling Medical Associates, Inc. ("Sterling Medical") and Walter Reed National Military Medical Center ("WRNMMC"), Dr. Leca's joint employers, terminated Dr. Leca because she opposed a coworker's racist harassment of African Americans and black employees and then complained about WRNMMC's ineffectual and slow response to the racist actions.

2.  Sterling Medical and WRNMMC also terminated Dr. Leca because of her race and religion, explicitly (and incorrectly) criticizing Dr. Leca for inappropriately mentioning religion

during her counseling of patients and claiming that Dr. Leca was "militant," which reflects a stereotype of African Americans.

3. Sterling Medical and WRNMMC subjected Dr. Leca to a hostile work environment based on race, religion, and her opposition to discrimination.

4. Dr. Leca brings this action to recover the damages she suffered as a result of Sterling Medical's violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, ("Title VII") and the Maryland Fair Employment Practices Act, Md. Code Ann. State Gov't § 606, *et seq.* ("FEPA").

<u>JURISDICTION AND VENUE</u>

5. This Court has federal question jurisdiction over this action pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*

6. This Court has supplemental jurisdiction over Plaintiff's FEPA claims pursuant to 28 U.S.C. § 1367, as the discrimination and retaliation at issue violated both Title VII and FEPA and thus the claims are part of the same case or controversy.

7. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because Sterling Medical committed the unlawful employment practice in Maryland in this judicial district.

<u>PARTIES</u>

8. Dr. Leca is a former employee of Sterling Medical.

9. Sterling is an employer within the meaning of Title VII and FEPA located in Cincinnati, Ohio.

10. Upon information and belief, Sterling Medical employed more than 100 employees in 2018 and 2019.

<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

11. Plaintiff exhausted her administrative remedies by timely filing a charge of discrimination with the EEOC on January 7, 2019.

12. This lawsuit has been timely filed within ninety-days of Plaintiff's receipt of the EEOC's notice of right to sue, which is dated July 10, 2019.

<u>FACTS</u>

*Background*

13. Sterling Medical hired Dr. Leca as an Internal Behavioral Health Consultant working as a contractor at WRNMMC on October 26, 2016.

14. Sterling Medical and WRNMMC jointly employed Dr. Leca.

15. Sterling Medical and Dr. Leca entered an "Employment Agreement," that governed Dr. Leca's work at WRNMMC.

16. Sterling Medical paid Dr. Leca, withheld employment taxes, and provided her employee benefits, including insurance and retirement benefits.

17. Sterling Medical hired Dr. Leca and had the power to fire her upon ninety-days-notice or for cause in some instances.

18. Sterling Medical ultimately informed Dr. Leca that her employment was terminated, although Sterling Medical stated that it was at the request of WRNMMC.

19.  Sterling Medical set Dr. Leca's initial work schedule (that too was later changed by WRNMMC).

20. Sterling Medical promulgated an employee handbook to Dr. Leca, which included anti-discrimination and anti-harassment policies and procedures, set policies for time-keeping and

requesting time off from work, provided policies for performance reviews, set policies regarding drug and alcohol use, and imposed requirements related to confidentiality.

21. The employee handbook also imposed a dress code that governed Dr. Leca's work clothing, hair color, finger nail length, nail polish, lipstick, and makeup color, and jewelry.

22. Sterling Medical also imposed a non-competition obligation on Dr. Leca through the parties' Employment Agreement and non-solicitation obligations through the handbook.

*Dr. Leca was subjected to a hostile work environment based on race*

23. At WRNMMC, Dr. Leca was supervised by CAPT Moira McGuire and MAJ Brian Neubauer of WRNMMC, and program manager Svetlana Kahle, who upon information and belief, was a contractor.

24. CAPT McGuire treated Dr. Leca poorly without justification.

25. For instance, in July and August 2017, CAPT McGuire refused to take required actions to ensure Dr. Leca was properly credentialed, which forced Dr. Leca to cease patient care and caused her embarrassment and hindered her relationships with patients.

26. In August 2017, CAPT McGuire threated Dr. Leca with a statement "We like having you here, but."

27. This implied that Dr. Leca's employment was in jeopardy.

28. In September 2017, CAPT McGuire and CAPT Doug Hawk refused to inform Dr. Leca that she had received awards for patient satisfaction.

29. Dr. Leca later learned of the awards from MAJ Neubauer, who did not have an explanation as to why they were not timely awarded by CAPT McGuire.

30. CAPT McGuire was also consistently condescending and passive-aggressive in her interactions with Dr. Leca.

31. In October 2017, CAPT McGuire failed to respond to Dr. Leca's repeated request for assistance with an event Dr. Leca was responsible for planning and then claimed that she was deploying to Puerto Rico and thus could not help, however, CAPT McGuire did not deploy to Puerto Rico at that time.

32. It became apparent that CAPT McGuire's harassment of Dr. Leca was based on her race.

33. CAPT McGuire was condescending and passive aggressive to other African American and African employees but was not unprofessional towards Dr. Leca's white colleagues.

34. In August 2017, one of Dr. Leca's coworkers, Jennifer May, and CAPT McGuire engaged in racist behavior when CAPT McGuire encouraged Ms. May to show videos of racist comedy sketches and directed two African employees to dance during a meeting.

35. On November 8, 2017, Ms. May made a comment to one of Dr. Leca's coworkers that "You black people don't like cold anyway…there is not that many black people who play hockey in the hockey league. Well, Vivian I know you all don't like snow… does it snow in Africa?"

36. On November 21, 2017, Ms. May made a comment to one of Dr. Leca's coworkers that "Hey Vivian, you people eat fried chicken and mac and cheese you all have high blood pressure anyway.  Oh wait, don't forget the ham!"

37. On November 24, 2017, Ms. May placed a drawing of a monkey eating a banana on an African employee's desk.

38. Ms. May's actions caused racial tension in Dr. Leca's office at WRNMMC, as the African American employees, including Dr. Leca, and African employees were deeply offended by the racist conduct and CAPT McGuire's and MAJ Neubauer's failure to stop or address the racist conduct.

39. In November 2017, MAJ Neubauer sent an email acknowledging that Ms. May's conduct

5

had caused trauma in the work place but framed the issue as one of "disrespect," and did not

acknowledge the racist actions by Ms. May.

*Dr. Leca opposed Ms. May's racist conduct and CAPT McGuire and MAJ Neubauer's deficient response to Ms. May's racist actions in a meeting with CAPT McGuire*

40. On December 4, 2017, Dr. Leca met with CAPT McGuire and the two discussed Ms. May's

actions.

41. CAPT McGuire defended and minimized Ms. May's actions, saying that she had shown the

monkey drawing to someone else who did not think that it was racist.

42. CAPT McGuire also stated that she preferred to deal with prior allegations of racism by

educating the individual alleged to have engaged in racism rather than disciplining them.

43. CAPT McGuire also made a comment about African American men being killed by police

and claimed that she had a similar experience because her son "who looks Latino like," was

pulled over by police while riding a bike.

44. CAPT McGuire also characterized Ms. May's actions as merely "perceived racism,"

implying that the actions were not actually racist and that Dr. Leca and her colleagues were

wrong to complain of racism.

45. CAPT McGuire's minimization of the racism of Ms. May was offensive and concerning in

light of CAPT McGuire's supervisory role.

*CAPT McGuire subjected Dr. Leca to a time and attendance audit*

46. In December 2017, CAPT McGuire subjected Dr. Leca to a time and attendance audit.

47. Dr. Leca repeatedly contacted MAJ Neubauer to ask about the basis of this audit, but he did

not respond or explain CAPT McGuire's justification.

48. Dr. Leca is unaware of any other employees in her department who CAPT McGuire

subjected to a time and attendance audit in December 2017.

*Dr. Leca reported CAPT McGuire's conduct to the Contract Office Representative and Sterling Medical*

49. On January 19, 2018, Dr. Leca emailed Brian Magid, the Contract Officer Representative ("COR") over her contract at WRNMMC, a complaint about CAPT McGuire's deficient response to the race-based actions in the office and her claim that Dr. Leca merely "perceived" the actions as racist.

50. In January 2018, Dr. Leca also emailed Sterling Medical Senior Regional Director Linda Spencer to complain about CAPT McGuire's deficient response to the racism in the office.

51. Dr. Leca then met with Mr. Magid to discuss management's deficient response and the racial tension that remained in the office.

52. Mr. Magid dismissed Dr. Leca's concerns, stating that "it's been dealt with."[1]

53. Mr. Magid refused, however, to address Dr. Leca's concerns regarding racial hostility in the office and CAPT McGuire's minimization of the racism in the department.

54. Ms. Spencer ignored Dr. Leca's communication.

*CAPT McGuire continued to subject Dr. Leca to a hostile work environment*

55. In January and February 2018, CAPT McGuire continued to text Dr. Leca an unreasonable number of messages while Dr. Leca was engaging in patient care and should not have had her phone on, despite Dr. Leca's request that she cease.

56. CAPT McGuire attempted to use Dr. Leca's failure to respond to messages to characterize her as non-responsive even though Dr. Leca should not have responded to these text messages while meeting with patients.

57. Eventually, MAJ Neubauer directed CAPT McGuire to stop.

---

[1] Dr. Leca assumes that Mr. Magid was referring to the fact that Jennifer May resigned from Sterling Medical / WRNMMC in December 2017.

58. CAPT McGuire still texted Dr. Leca a handful of times after this directive.

59. In February 2018, Dr. Leca learned that CAPT McGuire had criticized her to other employees by stating that Dr. Leca was not in the office enough and failed to follow instructions.

*Sterling Medical and WRNMMC terminated Dr. Leca's employment, falsely claiming that minor patient complaints justified her termination even though neither Sterling Medical nor WRNMMC investigated the validity of the complaints*

60. On March 9, 2018, CAPT McGuire informed Dr. that two patients had made complaints about her.

61. Patient complaints in behavioral health counseling are commonplace because the patients are often obtaining counseling because they are emotionally disturbed at the time of their counseling, and thus sometimes misperceive actions by their provider or complain as a way of lashing out.

62. CAPT McGuire informed Dr. Leca that the first complaint was that she had assaulted a patient with PTSD/TBI and potentially other diagnoses by holding her hands when she tried to leave Dr. Leca's office.

63. This complaint was totally inaccurate and the patient was emotionally disturbed generally, to the point that Dr. Leca had previously recommended that she receive more intensive treatment at WRNMMC and noted that she was not appropriate for behavioral health counseling.

64. The second complaint was that Dr. Leca had prayed with a patient the week prior.

65. While this is true, it did not breach policy and the patient had wanted to pray with Dr. Leca at the time.

66. The patient complained after WRNMMC denied her the opportunity to seek care outside of

WRNMMC, which upset her (though Dr. Leca had nothing to do with the denial).

67. Dr. Leca asked CAPT McGuire what she needed to do to address the complaints and CAPT McGuire indicated that—like most patient complaints—the complaints were not a big deal.

68. CAPT McGuire indicated WRNMMC would meet with Dr. Leca to discuss the complaints on March 12 but no meeting was ever held.

69. On March 13, 2018, Sterling Medical Senior Regional Director Linda Spencer called Dr. Leca and stated that she was being terminated based on patient complaints.

70. Dr. Leca stated that she had not been able to speak with WRNMMC about the complaints to rebut them but Ms. Spencer said that it did not matter and that she was terminated.

71. No one at WRNMMC or Sterling Medical ever spoke with Dr. Leca to determine the validity of the complaints, even though the only information about the complaints could come from the patients or Dr. Leca.

72. Dr. Leca later learned from an EEO counselor that WRNMMC claimed that Sterling Medical had investigated and substantiated the patient complaints, while Sterling Medical claimed WRNMMC had investigated and substantiated the complaints.

73. Sterling Medical never counseled Dr. Leca about her performance or conduct.

74. In addition to not investigating whether the complaints were accurate, WRNMMC and Sterling Medical did not allow Dr. Leca to resign as they apparently had allowed Ms. May, who was also a Sterling Medical contractor.

75. In July 2018, Dr. Leca received a peer review alleging that she was at fault for three patient complaints, including the two listed above.

76. The peer review was designed to prevent Dr. Leca from working at WRNMMC again and provided Dr. Leca her first opportunity to respond.

77. In the allegations, MAJ Neubauer stated that Dr. Leca was militant and aggressive to a coworker, which is a racial stereotype of African Americans, and was untrue.

78. MAJ Neubauer never raised allegations of aggressiveness or militancy to Dr. Leca during her employment or during a two-hour meeting following her termination.

79. The peer review also criticized Dr. Leca for being "hyper religious."

<u>DEMAND FOR JURY TRIAL</u>

80. Plaintiff respectfully demands a jury trial on all Counts.

<u>COUNT 1</u>

*Race discrimination in violation of Title VII*
*42 U.S.C. § 2000e, et seq.*

81. Plaintiff repeats and realleges each allegation of the complaint, as if fully set forth herein.

82. Defendant subjected Plaintiff to adverse employment actions because of Plaintiff's race in violation of Title VII.

83. Defendant subjected Plaintiff to a severe and pervasive hostile work environment and/or harassment because of Plaintiff's race.

84. Defendant acted intentionally, recklessly, and/or with malice.

85. As a result, Plaintiff has sustained damages including lost wages, mental anguish, emotional distress, and pain and suffering.  Plaintiff's damages are continuing.

86. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

COUNT 2

*Race discrimination in violation of FEPA*
*Md. Code Ann. § 20-601, et seq.*

87. Plaintiff repeats and realleges each allegation of the complaint, as if fully set forth herein.

88. Defendant subjected Plaintiff to adverse employment actions because of Plaintiff's race in violation of FEPA.

89. Defendant subjected Plaintiff to a severe and pervasive hostile work environment and/or harassment because of Plaintiff's race.

90. Defendant acted intentionally, recklessly, and/or with malice.

91. As a result, Plaintiff has sustained damages including lost wages, mental anguish, emotional distress, and pain and suffering.  Plaintiff's damages are continuing.

92. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

COUNT 3

*Religious discrimination in violation of Title VII*
*42 U.S.C. § 2000e, et seq.*

93. Plaintiff repeats and realleges each allegation of the complaint, as if fully set forth herein.

94. Defendant subjected Plaintiff to adverse employment actions because of Plaintiff's religion in violation of Title VII.

95. Defendant subjected Plaintiff to a severe and pervasive hostile work environment and/or harassment because of Plaintiff's religion.

96. Defendant acted intentionally, recklessly, and/or with malice.

97. As a result, Plaintiff has sustained damages including lost wages, mental anguish, emotional distress, and pain and suffering.  Plaintiff's damages are continuing.

98. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

<u>COUNT 4</u>

*Religious discrimination in violation of FEPA*
*Md. Code Ann. § 20-601, et seq.*

99. Plaintiff repeats and realleges each allegation of the complaint, as if fully set forth herein.

100.   Defendant subjected Plaintiff to adverse employment actions because of Plaintiff's religion in violation of FEPA.

101.   Defendant subjected Plaintiff to a severe and pervasive hostile work environment and/or harassment because of Plaintiff's religion.

102.   Defendant acted intentionally, recklessly, and/or with malice.

103.   As a result, Plaintiff has sustained damages including lost wages, mental anguish, emotional distress, and pain and suffering.  Plaintiff's damages are continuing.

104.   By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation,

12

embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

## COUNT 5

*Retaliation in violation of Title VII*
*42 U.S.C. § 2000e*, et seq.

105.    Plaintiff repeats and realleges each allegation of the complaint, as if fully set forth herein.

106.    Defendant subjected Plaintiff to adverse employment actions because Plaintiff opposed race discrimination and a race-based hostile work environment in violation of Title VII.

107.    Defendant subjected Plaintiff to a severe and pervasive hostile work environment and/or harassment because of Plaintiff's opposition to discrimination and a race-based hostile work environment.

108.    Defendant acted intentionally, recklessly, and/or with malice.

109.    As a result, Plaintiff has sustained damages including lost wages, mental anguish, emotional distress, and pain and suffering.  Plaintiff's damages are continuing.

110.    By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

## COUNT 6

*Retaliation in violation of FEPA*
*Md. Code Ann. § 20-601*, et seq.

111.    Plaintiff repeats and realleges each allegation of the complaint, as if fully set forth herein.

112.    Defendant subjected Plaintiff to adverse employment actions because Plaintiff opposed race discrimination and a race-based hostile work environment in violation of FEPA.

113.    Defendant subjected Plaintiff to a severe and pervasive hostile work environment and/or harassment because of Plaintiff's opposition to discrimination and a race-based hostile work environment.

114.    Defendant acted intentionally, recklessly, and/or with malice.

115.    As a result, Plaintiff has sustained damages including lost wages, mental anguish, emotional distress, and pain and suffering. Plaintiff's damages are continuing.

116.    By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant on all Counts, and award Plaintiff damages consisting of lost wages and benefits; compensatory damages for emotional distress, mental anguish, and harm to Plaintiff's professional reputation, and pain and suffering; punitive damages; an amount equal to the tax on any award; costs; attorney's fees; and any such other relief as the Court deems just and proper.

Respectfully submitted,

Alan Lescht & Associates, P.C.

By:     */s/Rani Rolston*_____
Rani Rolston
(VSB# 17402)
1825 K St., NW, Ste. 750
Washington, DC 20006
T: 202.463.6036
F: 202.463.6067
rani.rolston@leschtlaw.com
*Attorney for Plaintiff*